601 F.2d 943
 20 Fair Empl.Prac.Cas. 359,
20 Empl. Prac. Dec. P 30,134,
26 Cont.Cas.Fed. (CCH) 83,549
ILLINOIS TOOL WORKS, INC., Plaintiff-Appellant,
v.
F. Ray MARSHALL, Secretary of the Department of Labor;
Weldon J. Rougeau, Director, Office of Federal Contract
Compliance Program; Harold Brown, Secretary of Defense; W.
Graham Claytor, Jr., Secretary of the Navy; John P. White,
Assistant Secretary of Defense for Manpower Reserve Affairs
and Logistics; and Thomas W. Daniels, Jr. (Colonel),
Commander, Defense Logistics Agency Defense Contract
Administration Services Region, Chicago, Defendants-Appellees.
 No. 78-2426.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 19, 1979.
Decided July 20, 1979.
 
 1
 Gerard C. Smetana, Chicago, Ill., for plaintiff-appellant.
 
 
 2
 Cynthia Drabek, Dept. of Justice, Civil Rights, Washington, D. C., for defendants-appellees.
 
 
 3
 Before FAIRCHILD and WOOD, Circuit Judges, and SOLOMON,* District Judge.
 
 
 4
 SOLOMON, District Judge.
 
 
 5
 Illinois Tool Works, Inc. (ITW) appeals from a district court order in its favor which struck down certain regulations of the Office of Federal Contract Compliance Programs (OFCCP) and the Department of Defense because they violated Executive Order 11246. In its appeal, ITW contends that the declaratory judgment was not broad enough and failed to grant it some relief to which it is entitled.
 
 
 6
 ITW manufactures tools and machine parts at its twenty facilities throughout the United States. Government contracts constitute a substantial part of its business.
 
 
 7
 As a government contractor, ITW must comply with the terms of Executive Order 11246 (Order). This Order prohibits discrimination in employment on the basis of race, sex, religion, and national origin. The Order requires affirmative action by government contractors to ensure equal employment opportunities.
 
 
 8
 Government contractors must also comply with regulations and orders issued by the Secretary of Labor or his delegates under the Order. Most of the responsibility for enforcing the Order was delegated by the Secretary of Labor to the Director of OFCCP under 41 C.F.R. § 60-1.2. The Director of OFCCP delegated responsibility for securing compliance with the Order to other agencies, including the Defense Logistics Agency of the Department of Defense (DLA).
 
 
 9
 If a contractor fails to comply with the Order, its federal government contracts may be cancelled, terminated, or suspended. The contractor may also be debarred from or declared ineligible for future contracts and for extensions of existing contracts. Under section 208(b) of the Order,
 
 
 10
 "No order for debarment of any contractor from further Government contracts under section 209(a)(6) shall be made without affording the contractor an opportunity for a hearing."[1]
 
 
 11
 In January 1977, the DLA conducted an onsite review at ITW's Fastex Division facility in Des Plaines, Illinois, to determine whether ITW was complying with the Order.
 
 
 12
 In June 1977, the DLA sent ITW a "show cause" letter stating that "it has been determined as of 8 April 1977 that Fastex . . . is not in compliance with the Equal Employment Opportunity provisions of its contracts and subcontracts, and 41 C.F.R. 60-2.1 for its failure to provide a remedy for an affected class of females . . . " The letter ordered ITW to show cause within 30 days why enforcement proceedings should not be instituted against ITW for its failure to comply with the Order. The letter also informed ITW that "until this matter is resolved, your firm may be found to be a nonresponsible bidder on federal contracts."
 
 
 13
 Immediately thereafter, ITW was included in a public listing as a "non-awardable prospective contractor." The list, along with a notification that ITW failed to comply with the Order, was circulated to all prime contractors doing business with the federal government.
 
 
 14
 The DLA notified the Chief of Naval Material of the show cause letter. Without further notice to ITW, the Chief designated ITW "non-awardable," and therefore ineligible for contracts with the Navy. As a result, the Navy refused to execute a $138,000 contract which it had negotiated with ITW, and the Navy also refused to sign a contract modification worth about $100,000 to ITW.
 
 
 15
 ITW denied the allegation of non-compliance. In July 1977, ITW petitioned the Director of OFCCP to suspend its non-awardable status, asserting that ITW had not violated the Order, and because under section 208(b) of the Order ITW was entitled to a hearing before it could be debarred from government contracts.
 
 
 16
 The Director of OFCCP replied that "pending a complete review of the matter and a determination, we are asking the Department of Defense to defer any decisions to pass over Illinois Tool Works on the basis of (the show cause letter)."
 
 
 17
 The Chief of Naval Material agreed to the Director's request that ITW "not be subject to pass over until further notice." In spite of this apparent agreement, the Chief notified ITW that it "shall continue to be considered non-awardable."
 
 
 18
 On August 5, 1977, the district court ordered the government to refrain from classifying ITW as a non-awardable contractor.
 
 
 19
 On August 17, 1977, the Director of OFCCP took steps to comply with the court's temporary restraining order. The Navy executed the $138,000 contract.
 
 
 20
 ITW filed an amended complaint in which it alleged that during the two and a half months of its debarment without a hearing (June August 1977), it was denied government contracts. ITW also alleged that it "suffered substantial losses of business (as a subcontractor) from prime contractors" after its name was included on a published list of non-awardable contractors. ITW charged that under current regulations and procedures, government compliance agencies can effectively debar ITW from contracts merely by issuing a show cause letter. The debarment could continue until those agencies decided that substantial issues of law and fact warrant a hearing on the merits. At that time the debarment would be revoked. ITW asserted that this procedure permits an unlawful debarment in violation of section 208(b) of the Order.
 
 
 21
 ITW sought a preliminary injunction to prevent government compliance agencies from debarring it for alleged violations of the Order, and to stop the agencies from publishing or disseminating any list which named ITW as non-awardable before the agencies held administrative hearings and issued final decisions on the alleged non-compliance.
 
 
 22
 ITW also sought a judgment declaring that it was a violation of the Order and the Fifth Amendment (1) to debar a contractor under OFCCP regulations, and (2) to publish and disseminate to government agencies and prime contractors the names of contractors deemed to be in non-compliance and therefore "non-awardable" before a hearing and an appropriate administrative decision.
 
 
 23
 The district court held that the government procedures under 41 C.F.R. § 60-2.2(b)[2] and Armed Services Procurement Regulation (ASPR) § 12-801(1) constituted debarment without a hearing and were inconsistent with section 208(b) of the Order. The court held that those regulations were therefore invalid.
 
 
 24
 But the district court ruled that section 209(a)(1) of the Order was valid. That section specifically authorizes the government to publish and circulate a list of non-complying contractors, even before a hearing, as long as the list "does not designate the contractor as 'non-awardable' or 'non-responsible' or any other term tantamount to debarment."
 
 
 25
 Both parties filed notices of appeal. In December 1978, however, the government abandoned its appeal.
 
 
 26
 ITW, in this appeal, contends that the district court erred (1) in holding that section 209(a)(1) of the Order allows government agencies to publish lists of non-complying contractors before a hearing, and (2) in failing to issue a general declaration that all regulations which effectively debar contractors before a hearing are invalid.
 
 
 27
 Specifically, ITW challenges the validity of five regulations which implement the Order, namely, 41 C.F.R. §§ 60-2.1(b), 60-2.2(b), and 60-2.2(c) and ASPR §§ 7-2003.14(b)(3) and 12-801(c). ITW also contends that section 209(a)(1) of the Order itself violates due process.
 
 
 28
 The government asks us to dismiss ITW's appeal on the ground that it is moot. The government says that the regulations of which ITW complains are no longer being applied, and that under current procedures it no longer delays future contracts or passes over contractors because of an insufficient affirmative action program or because of an affected class problem, without a hearing. The government also says that "the dissemination of lists of non-complying contractors has ceased."
 
 
 29
 This case is not moot. Changes have been made in the administration of the Order which appear to remedy some of the matters of which ITW complains. The government, however, concedes that there are circumstances in which contractors may be declared non-awardable before a hearing.
 
 
 30
 Regulations issued to implement Order 11246 must be consistent with that Order.
 
 
 31
 We hold that before a hearing on the merits at which a contractor is found guilty of non-compliance with the Order, the government may not take any action which debars, or has the effect of debarring, that contractor from government contracts.
 
 
 32
 Under 41 C.F.R. § 60-2.2(b) and ASPR § 12-801(c), a contractor may be debarred from government contracts before a hearing merely because one government agency has issued a show cause letter, or because that agency has made a prima facie determination that the contractor has not complied with the Order.
 
 
 33
 The district court on summary judgment held those regulations invalid because they permitted debarment without a hearing and were therefore inconsistent with section 208(b) of the Order. We agree.
 
 
 34
 In this appeal, ITW challenges the validity of ASPR § 7-2003.14(b) because it is inconsistent with section 208(b) of the Order. Although ITW raised it in the district court, that court did not specifically consider this contention.
 
 
 35
 Under ASPR § 7-2003.14(b)(3), a contractor bidding on a contract must certify that neither he nor any of his divisions or affiliates or known first-tier subcontractors has received any written notification, such as a show cause letter, alleging non-compliance with the Order.[3] The regulation therefore debars recipients of show cause letters from bidding on government contracts. It also prohibits companies which seek federal government contracts from employing any first-tier subcontractors who have received show cause letters. The subcontractors are also debarred from government contracts before a hearing, merely because of a show cause letter. ASPR § 7-2003.14(b)(3) is invalid because it is inconsistent with section 208(b) of the Order.
 
 
 36
 ITW in this appeal, as in the district court, challenges the validity of 41 C.F.R. §§ 60-2.1(b) and 60-2.2(c) on the ground that they, too, are inconsistent with section 208(b) of the Order. We disagree.
 
 
 37
 Section 60-2.1(b) merely provides that a contractor has not complied with the Order as long as he has an "affected class" problem.[4] But a hearing on the merits is necessary to determine whether he actually has an affected class problem.
 
 
 38
 Under 41 C.F.R. § 60-2.2(c)[5] when a government compliance agency makes a nonresponsibility finding, it must issue a show cause letter to give the contractor an opportunity to avoid the enforcement procedures of section 209(a) of the Order. This section does not debar contractors from receiving government contracts. It is therefore not inconsistent with section 208(b) of the Order.[6]
 
 
 39
 Finally, ITW challenges the validity of any regulation or procedure under which the government, before a hearing on the merits, publishes the names of contractors alleged not to be in compliance with the Order.
 
 
 40
 The district court held that the government may publish and disseminate a list of such contractors. The court concluded that the government has specific authority to do it under section 209(a)(1) of the Order. That section provides that:
 
 
 41
 "In accordance with such rules, regulations, or orders as the Secretary of Labor may issue or adopt, the Secretary or the appropriate contracting agency may:
 
 
 42
 "(1) Publish, or cause to be published, the names of contractors or unions which it has concluded have complied or have failed to comply with the provisions of this Order or of the rules, regulations and orders of the Secretary of Labor."
 
 
 43
 Section 209 is included in Subpart D of the Order: "Sanctions and Penalties."
 
 
 44
 We struck ASPR § 7-2003.14(b)(3) because it is inconsistent with section 208(b) of the Order. This eliminates one vice which may result from publication of a non-compliance list before a hearing. Nevertheless, we still find the district court's construction of section 209(a)(1) offensive because of the strong likelihood that contractors will not deal with other contractors whose names appear on a non-compliance list.
 
 
 45
 In our view, publication of the list may itself be a sanction tantamount to debarment.
 
 
 46
 We hold that sections 208 and 209 should be construed together. When they are so construed, section 209 allows the government to publish the names of non-complying contractors only after hearings on the merits.
 
 
 47
 Government counsel asserts that the names of contractors are no longer published until the government makes a finding of non-compliance after a hearing. This conforms to the construction we place on section 209(a)(1).
 
 
 48
 We therefore affirm the district court's judgment declaring 41 C.F.R. § 60-2.2(b) and ASPR § 12-801(c) invalid. We reverse the district court's declaration that section 209(a)(1) of the Executive Order allows the government to publish a non-compliance list before a hearing on the merits. We further hold that 41 C.F.R. §§ 60-2.1(b) and 60-2.2(c) are valid, and that ASPR § 7-2003.14(b)(3) is invalid.
 
 
 
 *
 Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Section 209(a) provides that "In accordance with such rules, regulations, or orders as the Secretary (of Labor) . . . may issue or adopt, the Secretary or the appropriate contracting agency may
 "(6) Provide that any contracting agency shall refrain from entering into further contracts or extensions or other modifications of existing contracts, with any non-complying contractor, until such contractor has satisfied the Secretary . . . that such contractor has established and will carry out personnel and employment policies in compliance with the provisions of this Order."
 
 
 [2]
 41 C.F.R. § 60-2.2(b) and its analogue ASPR § 12-801(1) authorize a government contracting officer, before a hearing, to declare a contractor non-responsible and ineligible for government contracts if the officer is informed through sources within any government agency that the contractor has "substantially deviated from an approved affirmative action program."
 
 
 [3]
 ASPR § 7-2003.14(b)(3) provides that when the contract is not exempt from the Equal Employment Opportunity clause, the following term shall be inserted in the contract: "By submission of this offer, the offeror represents that, to the best of his knowledge and belief, . . ., up to the date of this offer no written notice such as a show cause letter, a letter indicating probable cause, or any other formal written notification citing specific deficiencies, has been received by the offeror from a Federal Government agency or representative thereof that the offeror or any of its divisions or affiliates or known first-tier subcontractors is in violation of any of the provisions of Executive Order 11246 . . . or rules and regulations of the Secretary of Labor (41 C.F.R., Chapter 60) and specifically as to not having an acceptable affirmative action program or being in non-compliance with any other aspect of the Equal Employment Opportunity Program . . ."
 
 
 [4]
 41 C.F.R. § 60-2.1(b) provides that "Relief, including back pay where appropriate, for members of an affected class who by virtue of past discrimination continue to suffer the present effects of that discrimination, shall be provided in the conciliation agreement entered into pursuant to § 60-60.6 of this title. An 'affected class' problem must be remedied in order for a contractor to be considered in compliance. Section 60-2.2 herein pertaining to an acceptable affirmative action program is also applicable to the failure to remedy discrimination against members of an 'affected class.' "
 
 
 [5]
 41 C.F.R. § 60-2.2(c) provides that:
 "(1) Immediately upon finding that a contractor has no affirmative action program, or has deviated substantially from an approved affirmative action program, or has failed to develop or implement an affirmative action program which complies with the requirements of the regulations in this chapter, the compliance agency representative or the representative of the Office of Federal Contract Compliance Programs, whichever has made such a finding, shall notify officials of the appropriate compliance agency and the Office of Federal Contract Compliance Programs of such fact. Whenever administrative enforcement is contemplated, the compliance agency shall issue a notice to the contractor giving him 30 days to show cause why enforcement proceedings under section 209(a) of Executive Order 11246, as amended, should not be instituted . . .
 "(2) If the contractor fails to show good cause for his failure or fails to remedy that failure by developing and implementing an acceptable affirmative action program within 30 days, the compliance agency shall promptly send to the Director a written request for enforcement proceedings pursuant to § 60-1.26 of this chapter . . ."
 
 
 [6]
 ITW does not specifically challenge 41 C.F.R. § 60-2.2(d), which provides that "during the 'show cause' period and formal proceedings, each contracting agency must continue to determine the contractor's responsibility in considering whether or not to award a new or additional contract."
 Insofar as that regulation purports to authorize government agencies to decide, before a hearing, whether a contractor may be awarded government contracts, it is inconsistent with section 208(b) of the Executive Order.